UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

JASON ANDRE CAFFEY,   Case No. 07-12132

    Debtor.

JASON ANDRE CAFFEY,   Adv. Case No. 07-01091

    Plaintiff,

vs.

KAREN RUSSELL,

    Defendant.

ORDER ENJOINING ENFORCEMENT OF CERTAIN STATE COURT ORDERS AND
AWARDING DAMAGES TO PLAINTIFF FOR VIOLATION OF THE STAY

Irvin Grodsky, attorney for the Plaintiff/Debtor, Jason A. Caffey
Patrice Blankenship, attorney for the Defendant, Karen Russell
Lucien Blankenship, attorney for the Defendant, Karen Russell

    Before the Court is Plaintiff/Debtor's adversary case against Karen Russell for an injunction against enforcement of certain orders of the state court and for damages for Defendant's violation of the automatic stay. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has authority to enter a final order. For the reasons indicated below, the Court concludes that enforcement of certain state court orders should be enjoined and that Defendant violated the automatic stay and is liable to Plaintiff for damages.

**FACTS**

    Jason Andre Caffey ("Caffey" or "Debtor") filed a chapter 11 bankruptcy petition on August 3, 2007, primarily due to debts from numerous child support obligations. He played professional

basketball for the Chicago Bulls from 1995 until approximately 2003. During those years he fathered several children and had child support obligations set at a high monthly amount based upon his then sizable NBA salary. After his NBA career ended, Caffey never got the owed child support obligations reset to a lower amount. His money ran out and that is when his problems arose.

One of the obligations owed is for the child of Ms. Karen Russell ("Ms. Russell" or "Defendant"). The debt to Ms. Russell is currently over $82,000. The Debtor states that his child support arrears have accrued due to the loss of the large income he was earning at the time the child support obligation was established. Ms. Russell filed a motion for writ of arrest in the Circuit Court of Tuscaloosa County, Alabama, on May 10, 2007 in attempt to collect the unpaid child support. It appears from various Tuscaloosa County court documents that both Mr. Lucien Blankenship and Ms. Patrice Blankenship represented and appeared on behalf of Ms. Russell in the domestic court proceedings. Debtor, through his domestic relations counsel, Mr. Edward Rowan, filed a motion or motions to modify the current child support obligation owed to Ms. Russell to a lower amount that was realistic based on his current circumstance. On July 12, 2007,[1] in the Circuit Court of Tuscaloosa County, Alabama, the Honorable Herschel T. Hamner, Jr., heard the following motions: Caffey's Motion to Vacate Judgment, Motion to Modify, Caffey's counsel's Motion to Withdraw, and the Ms. Russell's Motion for Contempt. Present at the hearing were Rowan, Ms. Russell, and her counsel, Lucien Blankenship and Patrice Blankenship.

According to the docket, at the hearing, Rowan's Motion to Withdraw was granted, the Motions to Vacate and Modify were denied, and Caffey was found in contempt for failure to pay child support. Judge Hamner announced in open court on July 13, 2007, that Caffey was found to

---

[1] The hearing was carried over to July 13, 2007.

be in contempt of court.[2] The Final Judgment and Order for these (4) rulings was not signed by the Judge until August 8, 2007 and was not stamped as entered by the court until August 9, 2007.

On August 17, 2007, a Writ of Arrest for Debtor, Caffey, was executed by Judge Hamner. Mr. Blankenship testified that he and Ms. Blankenship took no further action after the July 12th hearing date that caused the creation or entry of the Writ of Arrest. On September 25, 2007, Caffey was arrested pursuant to the Tuscaloosa Circuit Court's order.[3] He was held overnight at the Mobile County Metro Jail and then transported to Tuscaloosa, Alabama. He was incarcerated for nine days.

Caffey's new domestic relations counsel, Mr. John T. Fisher, negotiated the release of Caffey on October 4, 2007, by agreeing (1) to pay $10,000 to Ms. Russell in open court, (2) to mail $3,000 overnight to the Blankenships, (3) to pay $7,000 to the Blankenships by October 22, 2007, and (4) to pay $60,000 to the Blankenships by December 1, 2007 (Ms. Marita Hansberry secured this amount by conveying the deeds to two homes located in Pritchard, Alabama).

Meanwhile, after the July 12, 2007 hearing, but before the August 8, 2007 signing of the contempt order, and the September 25, 2007 arrest, Caffey filed his chapter 11 bankruptcy case. His bankruptcy petition was filed on August 3, 2007. Debtor testified at trial that he was not aware of any outstanding writ of arrest from Tuscaloosa County at the time he filed his chapter 11 case. He was aware of and does not dispute the debt owed to Ms. Russell, and Ms. Russell was listed as a creditor in Debtor's bankruptcy petition and schedules. The Certificate of Service from the Bankruptcy Noticing Center indicates that Ms. Russell and her counsel, Lucien Blankenship, were

---

[2] The fact that Caffey was found to be in contempt on July 13, 2007 and that this fact was announced in open court appears in the Final Judgment in a different font type than the rest of the order.

[3] Debtor was confronted by a Mobile Sheriff Deputy as he was entering his § 341 meeting (first meeting of creditors). The Deputy allowed him to attend the meeting of the creditors and arrested him after it adjourned.

sent notice of Debtor's bankruptcy filing by U.S. first class mail on August 8, 2007. The notice sent to Blankenship was mailed to the office address listed for him and his firm on the Alabama State Bar website and on the pleadings filed on behalf of Ms. Russell in Tuscaloosa County.

Rowan also sent a copy of the petition via facsimile to Lucien Blankenship on August 8, 2007. The fax number that was used was confirmed by Mr. Blankenship at trial to be his fax number. It is also the fax number listed for him on the Alabama State Bar website. The fax consisted of a copy of the bankruptcy petition and contained a note stating the bankruptcy filing "should stay any proceeding on past due child support." The transaction report for the fax indicated a successful transmittal from Rowan to Blankenship. Rowan sent the same fax communication, the petition and the note, to Judge Hershel Hamner, Jr. The transaction report stated that the fax was successfully transmitted. Rowan called Judge Hamner's chambers after sending the fax and Judge Hamner's assistant confirmed the fax was received.

Debtor's bankruptcy counsel, Mr. Irvin Grodsky, also attempted to contact Mr. Blankenship regarding the filing of the chapter 11 bankruptcy case. On the morning of September 26, 2007 (the day after Caffey's arrest), Grodsky telephoned Mr. Blankenship during normal business hours at the number listed for him on the Alabama Bar Association website (in the member's directory).[4] Mr. Blankenship did not answer this telephone call, so Grodsky left a voice mail message for him. After being unable to reach Mr. Blankenship by telephone, Grodsky also sent Mr. Blankenship an email notifying him of the Debtor's bankruptcy filing. He sent the email to the email address listed for Mr. Blankenship on the website of the Alabama State Bar. A copy of Grodsky's September 26, 2007,

---

[4]Patrice Blankenship is also listed on the Alabama Bar Association's website at the same address, telephone number, and fax number as Lucien Blankenship. To date, the website reflects this same contact information.

email to Mr. Blankenship also references the voice mail left for him. On November 19, 2007, Debtor filed an adversary complaint seeking to void the August 8, 2007 and October 4, 2007 Orders of the Circuit Court of Tuscaloosa County, Alabama and to hold the Defendant liable for damages pursuant to § 362(k) for violation of the automatic stay. A trial on the adversary case was held on January 11, 2007.

At trial, Rowan testified that he informed the court and the Blankenships at the July 12, 2007 hearing that Caffey was in the process of filing for bankruptcy. Fisher, who is Debtor's present domestic relations counsel in Tuscaloosa, testified that when he found out about Debtor's arrest he filed a motion to vacate the order, and he contacted Judge Hamner on Friday, September 29, 2007 to try and get an expedited hearing to have Debtor released as soon as possible. He stated at trial that he told Judge Hamner during the September 29, 2007 phone call that Debtor had a pending bankruptcy case and indicated that at some point the automatic stay of the bankruptcy would probably impact the domestic relations proceedings and potentially even stop them. However, he told the Judge he was not a bankruptcy attorney and would not be raising those issues himself; Caffey's bankruptcy counsel would do so when and where appropriate. Fisher also contacted the Blankenships on Friday, September 29, 2007, but testified he could not remember if he discussed the bankruptcy and the stay with them.

Debtor's release hearing was October 4, 2007. At the hearing, the terms of the Debtor's release were negotiated and put on the record. Fisher testified that at the release hearing, in Judge Hamner's chambers (or possibly in court), in the presence of Ms. Blankenship, he raised the issue of the automatic stay by questioning the interplay of the bankruptcy case with the arrest and release and commented on not knowing what "practical impact" the stay would have on what

5

Case 07-01091    Doc 20    Filed 01/28/08    Entered 01/28/08 16:26:06    Desc Main
Document    Page 5 of 18

they had negotiated that day. He further testified that he was hired to get Debtor released from jail; he was not a bankruptcy attorney, and he was not going to allow his client, Debtor, to sit in jail while everyone figured out how the bankruptcy stay affected the situation. By this time, Grodsky had already telephoned and emailed Mr. Blankenship and Rowan had faxed the bankruptcy papers to the Blankenships.

Debtor testified at trial that being incarcerated financially hindered the growth of his business. Debtor currently owns a daycare facility and was in the process of opening up three more facilities when he was incarcerated. Due to the arrest and jailing, he was unable to get a license from the State of Alabama to open these three daycare centers. Debtor testified that his inability to gain the license has cost him $30,000 to date (that is the amount of income to be received with the three daycare centers operating at full capacity). He has had to arrange for the daycare facilities to be opened under a license in someone else's name.

Debtor's incarceration was made public by print and television media in at least Mobile, Alabama, Atlanta, Georgia, and Milwaukee, Wisconsin. Debtor testified that he has a history of anxiety and suffered emotional distress and embarrassment due to the incarceration and its publication. Debtor was also forced to expend more money to hire attorneys to litigate the issues regarding the incarceration and alleged violation of the stay (Mr. Grodsky and Mr. Fischer are owed attorneys' fees regarding this matter).

Debtor alleges that the August 8, 2007 and October 4, 2007 Tuscaloosa Circuit Court Orders were entered in violation of the automatic stay, and he seeks damages for willful violation of the stay. Debtor contends (1) that at the time the Writ of Arrest was issued Defendant knew of the pending bankruptcy case and, therefore, the writ of arrest willfully violated the automatic stay

6

of section 362 of the Bankruptcy Code; (2) the negotiations and agreement reached by Debtor to gain his release from jail were conducted after Defendant received notice of the pending bankruptcy case; (3) the enforcement of the orders of the Circuit Court of Tuscaloosa County, Alabama caused Debtor and his chapter 11 estate irreparable harm. The Debtor seeks damages in relation to the alleged violation of the stay and a declaration that the order of August 8-9, 2007 and writ of arrest are void.

## LAW[5]

The plaintiff bears the burden of proof in a proceeding to recover for an alleged violation of automatic stay under §362(k); the required standard of proof is either a clear and convincing standard or a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *Johnson v. Smith (In re Johnson),* 501 F.3d 1163, 1170 (10th Cir. 2007); *Westman v. Andersohn (In re Westman)*, 300 B.R. 338, 342 (Bankr. D. Minn. 2003). In this case, the debtor has provided sufficient evidence to meet either standard.

There are three main purposes to the automatic stay in bankruptcy cases: (1) to stop collection efforts against a debtor so he has time to devise a plan to get him out of the financial situation that caused him to file a bankruptcy case in the first place; (2) to give assurance to all

---

[5] Prior to beginning the trial, after hearing arguments from both parties, the Court determined (on the record) that the Circuit Court of Tuscaloosa County, Alabama Contempt Order was not effective until it was signed on August 8, 2007 or entered on the docket on August 9, 2007, not as of July 13, 2007 when the contempt hearing was held and the oral ruling was announced. Even if the Court ruled the Order was effective on July 13, 2007, it would not change the outcome of the adversary case because § 362 requires that even the *continuation* of execution or collection against a debtor must stop immediately upon notice of a bankruptcy case. Regardless of the effect on July 13, 2007, as of August 3, 2007, any implementation of the order was stayed. *See In re Dunbar*, 235 B.R. 465, 471 (9th Cir. B.A.P. 1999); *In re Timbs*, 178 B.R. 989, 996 (Bankr. E.D. Tenn. 1994); *I.C.C. v. Holmes Transp., Inc.*, 931 F.2d 984, 987 (1st Cir. Mass. 1991); *In re Elder*, 12 B.R. 491 (Bankr. Ga. 1981).

creditors that 'other creditors are not racing to various courthouses to pursue independent remedies to drain the debtor's assets;' (3) to "harmonize the interests" of the creditors and debtor. *Johnston v. Parker (In re Johnston)*, 321 B.R. 262, 273-74 (Bankr. D. Ariz. 2005) (internal citations omitted); *see also*, H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97.

The Bankruptcy Code states:

(a) Except as otherwise provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title,...operates as a stay applicable to all entities, of -
>   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>   (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>   (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>                                       * * * *
>   (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
>                                       * * * *
(b) The filing of a petition under section 301, 302, or 303 of the title, ...does not operate a stay -
>                                       * * * *
>   (2) under subsection (a) -
>                                       * * * *
>       (B) of the collection of a domestic support obligation from property that is not property of the estate...
>                                       * * * *
(k)(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(a)(1)-(6), (b)(2)(B), (k).

A.

The automatic stay applies in this case pursuant to § 362 because Debtor filed a voluntary bankruptcy petition, and Ms. Russell proceeded against him by *continuing* an action to recover a claim against him (past due child support). *See* § 362(a)(1). Caffey filed an individual chapter 11 bankruptcy petition on August 3, 2007. Therefore, all property he owned on the date of filing, plus all earnings from services performed after commencement of the case but before the case is closed, dismissed, or converted is property of the estate. 11 U.S.C. §§ 541 and 1115. Consequently, the funds and property of the debtor that Ms. Russell sought to collect to pay child support arrearages were property of the estate and the collection of funds and the arrest to accomplish it were in violation of the stay. *See* § 362(a)(2), (3), (6).[6]

While the Bankruptcy Code does have an exception to the stay for collection of domestic support obligations, it only pertains to property that is not property of the debtor's estate. § 362(b)(2)(B). As stated above, Debtor's estate includes all property owned by him on August 3, 2007, the date of filing, and all earned after the filing; therefore, everything he owns is property of the estate and does not fall under the domestic support obligation exception of to the automatic stay. The stay stops all actions that are not within a listed exception from proceeding against a debtor - "even those in pursuit of nondischargeable obligations"- which a child support obligation is. *Johnston v. Parker (In re Johnston)*, 321 B.R. 262, 285 (Bankr. D. Ariz. 2005)(quoting *In re Weisberg*, 218 B.R. 740, 752 (Bankr. E.D. Pa. 1998)); *see*, 11 U.S.C. § 523(a)(5).

B.

---

[6] Some of the property pledged to ensure Caffey paid the support order negotiated on October 4, 2007 was property of a nondebtor, Marita Hansberry. However, the stay covers collection of property from her too because any property seized would result in a debt owed by Caffey.

In the Eleventh Circuit '[a]ctions taken in violation of the automatic stay are void and without effect.' *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) (citing *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982) (citing numerous cases from other circuits)); *see Albany Partners, Ltd. v. Westerbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 675 (11th Cir. 1984); *In re Hildreth,* 357 B.R. 650, (Bankr. M.D. Ala. 2006). Therefore, Caffey asserts correctly, that the order of August 8, 2007 (that was stamped entered into the docket on August 9, 2007) and the writ of arrest of August 17, 2007 are void *ab initio* and were without force or effect.

The procedure, after a bankruptcy case is filed, that a creditor must follow to attempt to collect from a debtor, including collection of a child support arrearage, "is not simply a formality." *In re Albany Partners, Ltd.*, 749 F.2d at 675. If the creditor's conduct does not fit within one of the Code's provided exceptions, the consequences for violating the stay "can be quite severe." *Id.*; *see also, Borg-Warner,* 685 F.2d at 1308; *In re Ungar*, 104 B.R. 517, 520 (Bankr. N.D. Ga.1989). Ms. Russell never sought relief from the stay.

Therefore, any actions Defendant took in violation of the automatic stay were without effect and must be undone. If the actions were "willful," Caffey is also entitled to damages pursuant to § 362(k).

C.

In order for Debtor to have any recourse or recover damages under § 362(k), the Court must find that the stay was violated "willfully." The test for determining whether a violation of the automatic stay is willful is: (1) whether alleged violator knew of the stay, and (2) whether the violation of the stay was intentional. *Johnston*, 321 B.R. 262. There is no specific intent requirement for a "willful" violation, and a "[c]reditor's good faith belief that stay is not being

10

violated is not relevant to whether its stay violation was 'willful' or whether compensation must be awarded." *In re Yates*, 332 B.R. 1, 8 (B.A.P. 10th Cir. 2005); *see In re Campion*, 294 B.R. 313 (B.A.P. 9th Cir. 2003); *In re Montgomery Ward, LLC*, 292 B.R. 49 (Bankr. D. Del. 2003)*; In re Hildreth,* 357 B.R. 650, 655 (Bankr. M.D. Ala. 2006); *In re Banks*, 253 B.R. 25 (Bankr. E.D. Mich. 2000). "For a violation of the automatic stay to be willful, the only requirement is that 'the entity engage in a deliberate act to violate the stay with the knowledge that the debtor has filed for bankruptcy.'" *In re Davis,* 201 B.R. 835, 837 (Bankr. S.D. Ala. 1996) (quoting *In re Flynn,* 185 B.R. 89 (S.D. Ga. 1995)(citing other authorities)); *Goichman v. Bloom (In re Bloom),* 875 F.2d 224, 227 (9th Cir.1989); *see In re Bishop,* 296 B.R. 890, 894 (Bankr. S.D. Ga. 2003).

Once a creditor has notice of the bankruptcy case, the creditor has the "responsibility to refrain from violating the stay." *In re Baird,* 319 B.R. 686, 689 (Bankr. M.D. ALA. 2004) (citing *Mitchell Const. Co., Inc. v. Smith (In re Smith),* 180 B.R. 311, 319 (Bankr. N.D. Ga.1995)). Many courts put a higher burden on a creditor than merely refraining from violating the stay, they "have emphasized the obligation of creditors to take affirmative action to terminate or undo any action that violates the automatic stay." *Johnston,* 321 B.R. at 283 (citations omitted). This view is due to the control the creditor has in a situation where it has initiated a process. The creditor should not be allowed to then sit back and 'choose to do nothing and pass the buck to the debtor' to stop the process. *Id.* at 284 (quoting *Elder v. City of Thomasville (In re Elder),* 12 B.R. 491 (Bankr. M.D. Ga. 1981). This is particularly true when a debtor has <u>tried</u> to stop the inappropriate action.

Caffey alleges in his complaint that Defendant violated the stay by having the writ of arrest issued and carried out and by collecting estate property as a result of the arrest. While the only defendant in the case is Ms. Russell, by the rules of agency, any knowledge and actions of

11
Case 07-01091    Doc 20    Filed 01/28/08    Entered 01/28/08 16:26:06    Desc Main
                   Document      Page 11 of 18

her attorneys are attributed to her. *New York v. Hill*, 528 U.S. 110, 115 (2000); *Armstrong v. Ashley,* 204 U.S. 272 (1907); *CIT Group/Equip. Fin., Inc. v. Robert*, 885 So.2d 185 (Ala. Civ. App. 2003). When an attorney is acting within the scope of his or her authority, the "attorney's actions or inactions may bind the client even where the client is allegedly not fully informed of those actions/inactions." *In re Cheriogotis*, 188 B.R. 996, 1000 (Bankr. M.D. Ala. 1994) (citing *Oden v. Morgan Cty. Bd. of Ed.*, 617 So.2d 1020 (Ala. 1991)). Some courts have narrowed the imputable notice and knowledge rule holding that such notice or knowledge of the attorney must pertain to the matter involved in the existing attorney-client relationship. *CTI Group/Equip. Fin., Inc.,* 885 So.2d at 191-92; *Stone v. Mellon Mortg. Co.*, 771 So.2d 451, 457 (Ala. 2000); *Mathis v. Blanks*, 212 Ga. 226 (1956); *see, e.g.*, 3 Am Jur. 2d *Agency* § 276 (2007). Such is the case here.

Ms. Russell was and currently is represented by Mr. Blankenship and Ms. Blankenship. They are her domestic relations attorneys and represent her in enforcing her child support obligation and collecting child support payments from Debtor. They have appeared on her behalf in the Circuit Court of Tuscaloosa County, Alabama and in this Court. The child support arrears that Ms. Russell hired the Blankenships to collect were the same arrears listed on Debtor's bankruptcy petition. Although Ms. Russell did not testify at the trial to confirm whether or not she received the Bankruptcy Court's standard notice that was sent to her and all other listed creditors, the Bankruptcy Noticing Center's certificate of service did not indicate that the notice was returned. *Konst v. Florida East Coast, Ry. Co.,* 71 F.3d 850, 852 (11th Cir. 1996); *Standley v. Graham Production Co.*, 83 F.2d 489, 491 (5th Cir. 1936) (notice mailed to creditors is presumed to have been received); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Broadhead,* 155 B.R. 856, 858-59 (S.D. N.Y. 1993) (presumption of mailing being received is strengthened when it is not returned to the sender); *Graham v. Hudson* (*In re Graham*), 290 B.R. 424, 432 (Bankr.

N.D. Ga. 2003) (the mailbox presumption rule is "well settled" in the Eleventh Circuit). Therefore, she had notice of the filing in her own right long before Caffey's arrest. Regardless, Ms. Russell also had notice (or potentially 5 notices) through the notice her attorneys received of Debtor's bankruptcy filing. Individually or through agency principles, Defendant had knowledge of Debtor's bankruptcy case and proceeded against him anyway. What makes her acts exceptionally inappropriate is that her actions were ones of commission, not just omission. Knowing of the stay in six ways (Ms. Russell's one notice and her attorneys' five notices), she proceeded to require him to turn over estate assets.

The Bankruptcy Court sent notice of Debtor's bankruptcy filing to Lucien Blankenship and Ms. Russell on August 8, 2007. Rowan faxed a copy of the bankruptcy petition to Mr. Blankenship and Judge Hamner on August 8, 2007, the same day the Contempt Order was signed, nine days before the Writ of Arrest was executed on August 17, 2007, and approximately 47 days before the arrest was carried out on September 25, 2007. Mr. Blankenship did testify at trial that he never received the fax of the petition. Rowan's fax transmittal report shows the fax was received. It seems very likely, since the fax transmittal sheet verifies a successful transmittal of the fax to the Blankenships' office, that Mr. Blankenship or Ms. Blankenship received it or one of their staff. The standard Bankruptcy Court notice was sent by U.S. Mail to the address confirmed by Mr. Blankenship to be his and Ms. Blankenship's office. The Bankruptcy Noticing Center did not indicate that the notice was returned. Mr. Blankenship denied receiving this notice as well.

Furthermore, even after the arrest of Caffey, Ms. Russell and the Blankenships received notice of the Debtor's bankruptcy case again and, although they had a duty to try and undo any wrongful actions taken in violation of the stay, they did nothing. After the arrest, Grodsky left a

voice mail message at Mr. Blankenship's telephone number[7] and then sent him an email. Mr. Blankenship said he does not look at emails if he does not recognize the sender. Fisher contacted Judge Hamner and informed him of the bankruptcy filing on September 29, 2007. Fisher also testified that on October 4, 2007 before the hearing that he told Judge Hamner and Ms. Blankenship in chambers that the bankruptcy petition had been filed and that the automatic stay would probably impact the negotiations of that day and the case.

Over all, the Blankenships were sent five notices of Caffey's bankruptcy filing - a notice of filing from the Court, a fax from Rowan, an email from Grodsky, a voice mail from Grodsky, and a statement by Fisher to Ms. Blankenship at court. Mr. Blankenship under oath denied receipt of every notice. The Court finds this testimony too incredible to be believed. No attorney could be in business and have an office system in which U.S. mail delivery, faxes, voice mails, and emails do not reach him. If Mr. Blankenship does not open emails from unknown senders, he acts at his peril.

It is clear by the facts in this case, that Ms. Russell, individually and/or through her counsel, knew of the bankruptcy case and intentionally acted to cause the Debtor to be incarcerated and to pay money from the estate to purge himself, which was a willful violation of the stay. According to case law, Ms. Russell and her attorneys do not need malice or specific intent to willfully violate the stay, they must only intend the act that does in fact violate the stay with knowledge of the bankruptcy filing, and that is what happened here.

---

[7] The telephone number dialed by Mr. Grodsky was the number Mr. Blankenship had listed with the Alabama State Bar Association. During direct examination at trial, it was discovered that this telephone number was in fact the number for the switchboard operator for the building where Mr. Blankenship has his office. However, Mr. Blankenship testified that if a call is placed to the switchboard operator during business hours, the call will be connected to Mr. Blankenship's office where a voice mail message could be left.

D.

For Debtor to recover damages he must also prove that he was injured by the willful violation. *In re Hedetneimi*, 297 B.R. 837, 841 (Bankr. M.D. Fla. 2003). Pursuant to the Bankruptcy Code, a debtor may be awarded compensatory damages for emotional distress caused by a stay violation. *In re Poole*, 242 B.R. 104, 112 (Bankr. N.D. Ga. 1999). A "causal link between the willful conduct in violation of the stay and the harm must be clearly established or readily apparent" in order to award actual damages for emotional distress. *In re Bishop*, 296 B.R. 890, 897 (Bankr. S.D. Ga. 2003) (citing *Burke v. Georgia Dept. of Rev. (In re Burke)*, 285 B.R. 534, 536-37 (Bankr. S.D. Ga. 2001)).

Under the Bankruptcy Code's provision for authorizing recovery for a willful violation of the stay, emotional damages qualify as "actual damages." *In re Dawson,* 390 F.3d 1139 (9th Cir. 2004); *Fleet Mort. Group, Inc. v. Kaneb*, 196 F.3d 265 (1st Cir. 1999). To recover an award of emotional distress for a willful violation of the automatic stay, a debtor must suffer significant harm, establish that harm, and demonstrate a causal connection between the harm and the violation of the stay. *In re Dawson*, 390 F.3d at 1148-50. In cases where the emotional distress is "readily apparent" there is no need for corroborative evidence or medical testimony. *Id.* at 1150 (citing *Untied States v. Flynn* (*In re Flynn*), 185 B.R. 89, 93 (S.D. Ga. 1995)); *see also, In re Bishop*, 296 B.R. 890 (debtor's emotional distress was not speculative where there was a casual connection between debtor's fear, anguish, personal humiliation, and distress over threatened incarceration by creditor's repossessing debtor's vehicle in violation of the stay); *In re Davis*, 201 B.R. 835 (Bankr. S.D. Ala. 1996) (awarded debtor damages for emotional distress without medical evidence due to the IRS's violation of the stay); *In re Fisher*, 144 B.R. 237 (Bankr. D. R.I. 1992) (awarded debtor damages for emotional distress and embarrassment

suffered, without proof by medical evidence, after creditor violated the stay in repossessing debtor's vehicle after his section 341 creditors meeting).

Caffey alleged emotional distress due to the violation of the automatic stay, but placed no value on his suffering caused by the ordeal. The incarceration seemed to be of less moment to him than the publicity which ensued. It is readily apparent to this Court that a publicized incarceration for anyone, but especially a public figure like a former professional athlete trying to establish himself in a business, would cause emotional distress. Debtor also testified he had a history of anxiety that would be exacerbated in this situation. The Court, therefore, concludes that the emotional distress of being jailed nine days and the publicity from it is worth at least $5,000.

Caffey testified after his incarceration, he could not get his three new daycare centers licensed in his name. He stated that he lost $30,000 in income because of his inability to get theses licenses in his name. The delay was costly. Thirty thousand dollars is not a small matter to a chapter 11 debtor. There was no evidence presented to the contrary. The loss is directly attributable to the jailing of Debtor.

The same is true of the attorneys fees of attorneys Grodsky and Fisher that have been incurred in undoing this situation. Grodsky and Fisher will be allowed to file affidavits attesting to the fees and expenses Caffey incurred in this matter, and these fees will be included in any damage award.

The Debtor seeks punitive damages of three times the actual damages as well. The Court concludes such an amount is too high. The purpose of punitive damages is to punish a stay violation when it is particularly egregious and/or when it is necessary to insure the violator understands the severity of the offense. *See In re Ocasio*, 272 B.R. 815, 825-26 (B.A.P. 1st Cir.

16
Case 07-01091    Doc 20    Filed 01/28/08    Entered 01/28/08 16:26:06    Desc Main
Document    Page 16 of 18

2002); *In re Davis*, 374 B.R. 366, 372-74 (Bankr. S.D. Ga. 2007); *In re Kortz,* 283 B.R. 706, 713 (Bankr. N.D. Ohio 2002); *In re Riddick*, 231 B.R. 265, 269 (Bankr. N.D. Ohio 1999). Ms. Russell, against whom this award will be entered, was not shown to be legally astute or doing any more than following her attorneys' lead. She should not be subject to a large award because her conduct was not egregious.

In this case, the conduct of the attorneys allowed Caffey to be jailed and allowed money to be taken from his estate that belonged to all of his creditors - not just Ms. Russell. Also, Mr. Blankenship's failure to admit receipt of any of the five communications about the bankruptcy filing - from the court and three attorneys - was offensive to the Court. The Court concludes Mr. Blankenship was either not candid with the Court or manages his office so negligently his behavior on behalf of his client, Ms. Russell, should be punished. Ms. Blankenship did not testify but the evidence showed she personally received at least one of the notices (Mr. Fisher's statement in court on October 4, 2007), yet she did not stop the proceedings against Caffey either.

For attorneys the punishment of a written order such as this is severe. A sizeable monetary punishment is not necessary. The Court concludes that $5,000 in punitive damages should be awarded.

Therefore it is ordered that:

1. The order of August 8 or 9, 2007 and the Writ of Arrest of August 17, 2007 are declared VOID *ab initio* and shall have no force or effect.

2. Plaintiff, Jason Andre Caffey, is awarded a judgment against Defendants, Karen Russell, in the amount of $40,000.

17
Case 07-01091    Doc 20    Filed 01/28/08    Entered 01/28/08 16:26:06    Desc Main
Document    Page 17 of 18

3. Plaintiff, Jason Andre Caffey, is awarded a judgment against defendant, Karen Russell, for the attorneys' fees and expenses of Irvin Grodsky and John Fisher as such amounts are established by this Court.

4. By February 15, 2008, Irvin Grodsky and John Fisher shall file affidavits with itemized listings of fees and expenses. Defendant shall have until February 29, 2008 to file any objections to the fees and expenses claimed. If any objection is filed, the Court will hold a hearing on the fee issue on March 25, 2008 at 8:30 a.m.

5. After the amount of attorneys' fees awarded to Jason Andre Caffey for the work of Irvin Grodsky and John Fisher is determined, a final order and judgment will be issued.

Dated: January 28, 2008

_/s/ Margaret A. Mahoney_
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE