IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| KAREN RUSSELL, | ) |  |
|---|---|---|
| Appellant, | ) | CIVIL ACTION NO. 08-00450-CG-C |
| v. | ) |  |
| JASON ANDRE CAFFEY, | ) | BANKRUPTCY CASE NO. 07-12132 |
| Appellee. | ) | ADVERSARY CASE NO. 07-01091 |

## ORDER

Appellant, Karen Russell, appeals several orders and judgments entered in Adversary Case No 07-01091, filed within Appellee's bankruptcy case, Case No. 07-12132-MAM-11. Specifically, Russell seeks appellate review of:

> 1) the orders denying Russell's motion for reconsideration of the court's March 17, 2008 order (Adv. Docs. 46, 47);
>
> 2) the order and judgment overruling Russell's objection to the professional fees of Irvin Grodsky and sustaining Russell's objection to professional fees of John Fisher and awarding Appellee a total of $57,470.50 (Adv. Docs. 64, 65); and
>
> 3) the order and judgment enjoining the enforcement of certain state court orders and awarding damages in the amount of $57,470.50 to Appellee for Russell's violation of the automatic stay (Adv. Doc. 66).

(See Doc. 7 - Amended Notice of Appeal). This court has appellate jurisdiction over this case pursuant to 28 U.S.C. § 158(a)(1). As set forth below, the court finds that the U.S. Bankruptcy Court for the Southern District of Alabama correctly found that Russell violated the bankruptcy stay and awarded appropriate relief. As such, the decisions of the U.S. Bankruptcy Court on appeal in this case are due to be affirmed.

## FACTS

The basic facts as stated by the bankruptcy court are generally not in dispute.[1] Appellee, Jason Andre Caffey, filed a chapter 11 bankruptcy petition on August 3, 2007, primarily due to debts from numerous child support obligations. One of the child support obligations owed is for Russell's child. On May 10, 2007, prior to Caffey filing bankruptcy, Ms. Russell filed a motion for writ of arrest in the Circuit Court of Tuscaloosa County, Alabama, in an attempt to collect the unpaid child support. Attorneys Lucien Blankenship and Patrice Blankenship represented and appeared on behalf of Ms. Russell in the domestic court proceedings. The Circuit Court of Tuscaloosa County, Alabama, held a hearing on the motion for contempt and other motions before the court on July 12, 2007.[2] Russell and her counsel, Lucien Blankenship and Patrice Blankenship, were present at the hearing. Caffey was not present at the July 12, 2007 hearing and his counsel, Edward Rowan, withdrew from the case at the hearing. Caffey was found in contempt for failure to pay child support; however, the final judgment and order for the ruling was not signed by the Circuit Court judge until August 8, 2007,[3] after Caffey's bankruptcy filing. A writ of arrest for Caffey was executed by the Circuit Court judge on August 17, 2007. On September 25, 2007, a Mobile County Sheriff's Deputy confronted Caffey as he was entering his § 341 meeting (first meeting of the creditors), but allowed Caffey to attend the meeting before arresting him pursuant to the Circuit Court order.

---

[1] The facts stated here are taken almost verbatim from the bankruptcy court's orders. Russell does dispute some of the bankruptcy court's findings and conclusions which are based on these underlying facts.

[2] The hearing was carried over to July 13, 2007.

[3] The order was stamped and entered by the court on August 9, 2007.

2

Caffey's new counsel negotiated Caffey's release on October 4, 2007, by agreeing (1) to pay $10,000 to Ms. Russell in open court, (2) to mail $3,000 overnight to the Blankenships, (3) to pay $7,000 to the Blankenships by October 22, 2007, and (4) to pay $60,000 to the Blankenships by December 1, 2007. The terms of Caffey's release were put on the record.

Caffey testified that he was not aware of any outstanding writ of arrest from Tuscaloosa County at the time he filed his Chapter 11 case. Caffey listed the debt owed to Ms. Russell in his bankruptcy petition. The certificate of service from the Bankruptcy Noticing Center indicates that Ms. Russell and her counsel, Lucien Blankenship, were sent notice of Caffey's bankruptcy filing by U.S. first class mail on August 8, 2007. The notice sent to Blankenship was mailed to the office address listed for him and his firm on the Alabama State Bar website and on the pleadings filed on behalf of Ms. Russell in Tuscaloosa County. Caffey's prior counsel, Edward Rowan, also sent a copy of the petition via facsimile to Lucien Blankenship on August 8, 2007. The fax number that was used was confirmed by Mr. Blankenship at trial to be his fax number. It is also the fax number listed for him on the Alabama State Bar website. The fax consisted of a copy of the bankruptcy petition and contained a note stating the bankruptcy filing "should stay any proceeding on past due child support." The transaction report for the fax indicated a successful transmittal to Blankenship. Rowan also sent the same fax communication to the Circuit Court judge in Tuscaloosa County and the fax transaction report indicates it was successfully transmitted. Rowan called the Circuit Court judge's chambers and the judge's assistant confirmed that the fax was received. Caffey's bankruptcy counsel, Irvin Godsky, also attempted to contact Mr. Blankenship by calling his office during normal business hours; however, Blankenship did not answer the call and Grodsky left a voice mail message for him.

3

Grodsky followed the phone message up with an email notifying him of Caffey's bankruptcy filing.

On November 19, 2007, Caffey filed an adversary complaint seeking to void the August 8, 2007 and October 4, 2007 orders of the Circuit Court of Tuscaloosa County and to hold Russell liable for damages pursuant to § 362(k) for violation of the automatic stay. Although she now claims she was not representing Russell in the adversary case, Ms. Blankenship appeared at each adversary hearing. Ms. Blankenship was not admitted to practice in federal court and was therefore unable to file pleadings electronically with the bankruptcy court, but was given permission by the court to file documents by mail and facsimile. Ms. Blankenship contacted the bankruptcy court on several occasions, filed a witness and exhibit list in preparation for trial, filed a proof of claim in Caffey's bankruptcy case for child support owed to Russell, drafted an answer to the adversary complaint that she e-mailed to Caffey's attorney with a note stating she was filing the answer[4]. She also participated in the trial of the adversary case.

The trial of the adversary case was held on January 11, 2007. The bankruptcy court determined that there had been a violation of the stay and awarded damages to Caffey in its amended opinion dated March 17, 2008. Russell moved for reconsideration of the March 17, 2008 order claiming that Ms. Blankenship was not representing Russell in the adversary case, that the bankruptcy court has no personal jurisdiction over Russell because she was never served with a summons and complaint, that there was no violation of the stay because Caffey's incarceration was due to criminal, not civil, contempt, and that under Carver,[5] the court should

---

[4] The answer was never actually filed with the court.

[5] Carver v. Carver, 954 F.2d 1573 (11th Cir. 1992).

4

have abstained from ruling on the domestic relations issue of enforcement of a child support obligation. The bankruptcy court held a hearing on the motion on May 13, 2008.

At that hearing, Russell testified that Lucian Blankenship and Patrice Blankenship were her attorneys for the action pending against Caffey in Tuscaloosa County for failure to pay child support. Russell stated that she became aware of Caffey's bankruptcy filing through media coverage and was unaware that Caffey had filed an adversary case against her until Ms. Blankenship informed her of the case in December. Russell admitted that she was present at the trial, knew that Ms. Blankenship had filed papers for her in the adversary case, knew that Ms. Blankenship had talked to the bankruptcy court for her, and that she had never told the court that Ms. Blankenship was not her attorney or did not represent her in the adversary case. Ms. Blankenship, likewise, never advised the bankruptcy court or Caffey's counsel that she was not representing Russell in the adversary case. Ms. Blankenship also never objected to there being no summons issued prior to the entry of the March 17, 2008 opinion.

The bankruptcy court found that Ms. Blankenship had provided insufficient evidence to negate the general rule that an attorney's appearance is presumed to be authorized. The bankruptcy court further found that by appearing herself and through her attorney at hearings and trial without raising the issues of lack of personal jurisdiction or improper service, Russell had submitted herself to the jurisdiction of the court and had waived her right to demand proper service or to claim lack of personal jurisdiction. The bankruptcy court also found that Caffey was incarcerated for civil, rather than criminal contempt, because the contempt order contained purge language which would allow Caffey to avoid incarceration by paying the amount owed to Russell. Russell's claim that the court should have abstained from ruling on the adversary case

5

because it involved domestic relations law was also rejected by the bankruptcy court. The court found that Carver did not apply to the facts of this case since the adversary case did not involve the issuance of a divorce, alimony, or child custody decree and the court's ruling did not disturb or upset a prior state court determination of any domestic relations status or child support obligation.

## ANALYSIS

### A. Standard of Review

The bankruptcy court's factual findings are generally reviewed under the clearly erroneous standard. In re Downtown Properties, Ltd., 794 F.2d 647, 651 (11th Cir. 1986)(citing In re Chalik, 748 F.2d 616, 619 (11th Cir. 1984)).

> Sitting in its appellate capacity, the court makes no independent factual findings. [In re Williamson, 15 F.3d 1037, 1038 (11th Cir.1994)]. The bankruptcy court's findings of fact will not be set aside unless clearly erroneous. Id. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed. General Trading, Inc. v. Yale Materials Handling Corp., 119 F.3d 1485, 1494 (11th Cir.1997).

In re Hatem, 273 B.R. 900, 903 (S.D. Ala. 2001). The bankruptcy court's conclusions of law are reviewed on a de novo basis. In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996).

### B. Discussion

Russell's brief lists thirteen issues before the court on appeal. (Doc. 9, pp. 11-13). The court will discuss certain of the issues together, as they overlap. Additionally, those issues that were listed in appellant's briefs, but not argued, are deemed abandoned.

#### 1. Notice and Service of Bankruptcy and Adversary Case

Russell asserts that, because she was never properly served with the adversary complaint,

6

Case 07-01091   Doc 79   Filed 09/30/09   Entered 09/30/09 15:58:43   Desc Main
Document      Page 6 of 15

the court did not have jurisdiction over her. According to Russell, she was completely unaware that she had a right to notice and service and was unaware that she was being sued until the trial began. The court notes that the adversary proceeding began with a motion for temporary restraining order (TRO) and that notice of the TRO hearing was given to Russell's known counsel who then appeared at the TRO hearing without making any reservation known to the court. As discussed below regarding Russell's representation by counsel, Russell and her counsel participated throughout the case and failed to raise the issue until after judgment was entered. Since counsel's appearance must be deemed authorized and since no attack on personal jurisdiction was made by motion, in a responsive pleading, or even at trial, the defenses of lack of jurisdiction over the person and insufficient service of process are waived. FED. R. CIV. P. 12(h).

### 2. Counsel's Representation of Russell in Bankruptcy Proceeding

Russell contends that she never retained Ms. Blankenship to represent her in bankruptcy court. However, Ms. Blankenship appeared at every hearing in the adversary case and announced that she was present to represent Ms. Russell. Neither Ms. Blankenship, nor Ms. Russell, indicated in any way that Ms. Blankenship did not have authority from her client to act. Ms. Blankenship contacted the bankruptcy court on several occasions, filed a witness and exhibit list in preparation for trial, filed a proof of claim in Caffey's bankruptcy case for child support owed to Russell, drafted an answer to the adversary complaint that she e-mailed to Caffey's attorney with a note stating she was filing the answer, and participated in the trial of the adversary case. As noted by the bankruptcy judge, if Russell or Blankenship had indicated in any manner that Blankenship was not authorized to represent Russell, the proceedings would

7

have stopped until Ms. Russell could obtain counsel. Since Ms. Blankenship appeared to be representing Russell and neither Russell nor Blankenship indicated otherwise, the bankruptcy court correctly relied on that fact in proceeding with the matter. See Osborn v. Bank of U.S., 22 U.S. 738, 830, 6 L.Ed. 204 (1824) (the appearance of an attorney whether for a natural person or for a corporation "has always been received as evidence of his authority"); Booth v. Fletcher, 101 F.2d 676, 683 (D.C. Cir. 1938) ("the presumption is that an attorney at law who appears in regular manner on behalf of a party litigant has authority to do so" (citations omitted)); Bethlehem Steel Corp. v. Devers, 389 F.2d 44, 45 (4th Cir. 1968) ("The presumption that an attorney who enters a general appearance has his client's authorization is a strong one." (citations omitted)). Ms. Blankenship cannot appear in court and participate in the proceedings and later, after an adverse ruling, state that she never represented Ms. Russell.

The fact that Ms. Blankenship and Ms. Russell appeared telephonically at trial, rather than in person, is irrelevant. Ms. Blankenship was not required to appear by phone; she had requested that she be allowed to do so. Ms. Blankenship and Ms. Russell's participation in the proceeding is not somehow lessened by the fact that they chose to appear telephonically. Ms. Blankenship actively participated in the trial by cross-examining plaintiff's witnesses and presenting her own witnesses and exhibits. The bankruptcy court's finding, that Ms. Blankenship represented Russell in the bankruptcy proceeding, is not be clearly erroneous.

### 3. Abstention due to Carver

Russell contends that the Bankruptcy Court should have abstained from ruling on the case under Carver v. Carver, 954 F.2d 1573 (11th Cir. 1992), because the case involves important issues of domestic law. Carver explains that "[t]he reasons for federal abstention in

these cases are apparent: the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts." Id. at 1578 (citation omitted). "Decisions which involve alimony or child support, generally under continuing supervision by the state courts, could require the bankruptcy court to second guess the state court on such matters and could produce conflicting court decrees further aggravating an already delicate situation." Id. at 1579. However, the Carver decision made clear that not all federal cases that involve alimony or child support require abstention. "Where the purposes of the automatic stay provision would clearly be served by affording a remedy for its violation, and the court would not be required to delve too deeply into family law, the court need not abstain from hearing the claim." Id. at 1580. The Carver court instructs bankruptcy and district courts to "carefully sift through the facts, keeping in mind the purposes of the automatic stay provision as well as concerns of justice, comity, and judicial economy that support abstention in domestic relations cases." Id. at 1579.

> In this case, as the bankruptcy court explained, the stay violation harmed other creditors.
>
> Caffey has other children and other outstanding child support obligations. If each mother decided on her own to continue to enforce her support obligation despite the fact that Caffey has filed for bankruptcy, all others would be harmed in the process. The enforcement of the Tuscaloosa County order caused Caffey to be denied two or three day care licenses from the state that were pending approval at the time he was jailed. These licenses would have allowed him to increase his monthly income substantially which would have benefitted all of his creditors - in this case, children.

(Bankr. Doc. 47, p. 10). As such, the purposes of the automatic stay provision are clearly served by affording a remedy for its violation. Furthermore, the adversary case does not affect the prior determination of any domestic relations status or child support obligation. The domestic

9

Case 07-01091    Doc 79    Filed 09/30/09    Entered 09/30/09 15:58:43    Desc Main
Document      Page 9 of 15

relations exception has been narrowly construed to only encompass cases involving the issuance of a divorce, alimony or child custody decree. Ankenbrandt v. Richards, 504 U.S. 689, 704, 112 S.Ct. 2206, 2215 (U.S. 1992). The issues presented by the adversary proceeding in this case did not require that the court delve too deeply into family law. As such, the bankruptcy court's decision to hear the case, rather than abstain, was appropriate.

### 4. Type of Contempt

Russell argues that she did not violate the stay, because Caffey was arrested for criminal contempt, rather than civil contempt. Although Russell contends there was no purge amount, the final judgment which ordered Caffey's incarceration stated the following: "[t]he Defendant may purge himself of contempt by paying the sum of Eighty-two thousand, Six Hundred Eighty-five and 86/100 dollars ($82,685.86) plus statutory interest on past support ..." Although the actual writ of arrest did not contain the purge language, the writ states that it is "[b]ased on the Court's separate Order ... entered in writing on August 8, 2007" and further states that Caffey was to be confined pursuant to the terms of that order. As explained by the bankruptcy court,

> "The purpose of civil contempt is to compel compliance with a court's order, and to achieve that purpose, the court is empowered to commit the contemnor to imprisonment until he or she complies with the order . . . Unlike civil contempt, criminal contempt presupposes accomplished conduct, rather than contemplated or ongoing conduct." In re Allison, 182 B.R. 881, 884 (Bankr. N.D.Ala.1995). Criminal contempt consists of a specific punishment over which the contemnor has no control. Id. It is this control, the ability to purge oneself, that distinguishes civil contempt from criminal contempt.

(Adv. Doc. 47). Neither party appears to disagree with the bankruptcy court's general statements of law quoted above and Russell has not shown the bankruptcy court's finding that the contempt order contained purge language and, therefore, constituted civil contempt was in error.

10

## 5. Failure to Act as a Violation of the Stay

Russell argues that she could not have violated the stay because she took no action after Caffey's bankruptcy filing. Ms. Russell contends that she had no control over the actions of the state court judge. In support of her argument, Russell appears to rely on Carver v. Carver again. 954 F.2d 1573 (11th Cir. 1992). However, in Carver, the Court did not conclude that the automatic stay had not been violated, but that the bankruptcy court should abstain from awarding damages under the circumstances of that case. As discussed above, this court agrees with the bankruptcy court that abstention is not appropriate for this case. The Carver Court clearly indicated that the bankruptcy stay applied to the alleged violation and that the proper course of action for the creditor was to file for relief from the stay under 11 U.S.C. § 362(d). Id. at 1578. In this case, Ms. Russell proceeded against Caffey by continuing the action to recover the past due child support. Section 362(a)(1) expressly states that the stay is applicable to:

> the commencement or continuation... of a judicial, administrative, or other action or proceeding against the debtor .. to recover a claim against the debtor that arose before the commencement of a case under this title.

11 U.S.C. § 362(a)(1). Once Russell had notice of the bankruptcy filing, she was obligated to discontinue the proceeding until either a relief from the stay under § 362(d) was issued or the bankruptcy proceeding was dismissed. However, Russell did not attempt to halt the contempt proceeding or seek relief from the stay. Although Russell and her counsel were sent notice of Caffey's bankruptcy filing by U.S. first class mail on August 8, 2007,[6] they took no affirmative

---

[6] Although Russell claims she never received notice of the bankruptcy filing, the evidence clearly indicates that she and her counsel knew of Caffey's bankruptcy. The bankruptcy court found that Russell and her counsel were sent five notices of Caffey's bankruptcy filing - "a notice of filing from the Court, a fax from Rowan, an email from Grodsky, a voice mail from Grodsky, and a statement by Fisher to Ms. Blankenship at court." (Adv. Doc.

11

action to stop or undo the writ of arrest which was executed on September 25, 2007. As the bankruptcy court explained, courts have emphasized that creditors must "take affirmative action to terminate or undo any action that violates the automatic stay." See e.g. Johnston v. Parker (In re Johnston), 321 B.R. 262, 282 (Bankr. D.Ariz. 2005) (citations omitted). The creditor that initiated the process is "in the driver's seat" and should not be allowed to then sit back and "choose to do nothing and pass the buck to the debtor" to stop the process. Id. at 284 (quoting Elder v. City of Thomasville (In re Elder), 12 B.R. 491 (Bankr. M.D.Ga.1981)).

Russell cites an unreported decision from the Bankruptcy Court in the Northern District of New York[7] for the proposition that, once the state court judge enters judgment, the state court plaintiff's involvement in the action ends. As such, she contends that she had no duty to prevent the state court from carrying out its order. However, even if Russell had no duty after the final judgment and writ of arrest was entered to attempt to stop Caffey's arrest, the state court order was not entered until September 25, 2007, more than a month after Russell was notified of Caffey's bankruptcy. Moreover, Russell continued to be involved in the proceeding even after Caffey's arrest. Thus, even if this court considered the state court's oral determination that Caffey was in contempt to be the date which ended Russell's required involvement, Russell violated the stay by continuing to seek payment of the debt from Caffey long after that date. On

---

23, p. 15). The bankruptcy court found that Mr. Blankenship's testimony that he did not receive any notice was "too incredible to be believed." (Id.). This court finds that the bankruptcy court's finding that Russell received notice of Caffey's bankruptcy is not clearly erroneous.

[7] In re Burlingame, Case No: 04-68617 (Bankr. N.D.N.Y May 16, 2005). The court notes that Russell improperly cited the case as a district court case and failed to submit a copy of the case or provide a Westlaw or Lexis cite for the case.

12

October 4, 2007, Russell negotiated payments[8] from Caffey before agreeing to his release from jail and required that Caffey turn over estate assets. Thus, she actively sought payment of the debt two months after Caffey filed bankruptcy.

Russell makes much of the fact that neither Russell's prior counsel, nor Caffey's prior counsel, knew how the bankruptcy stay affected the state court litigation. While such facts may help explain the confusion in this case, it does not negate the fact that the stay was violated. To be actionable, a violation must be "willful," but it is not necessary that the violator knew the legal import of her actions. The test for determining whether a violation is willful is whether the violator knew of the stay and intentionally engaged in acts or inactions later found to violate the stay. See In re Byrd, 2009 WL 385571, *2 (Bkrtcy. N.D.Ala. Feb. 5, 2009) (citing Jove Eng'g, Inc. v. I.R.S. (In re Jove), 92 F.3d 1539, 1555 (11th Cir.1996)); see also Franchise Tax Bd. v. Roberts (In re Roberts), 175 B.R. 339 (9th Cir. BAP 1994) (finding acceptance of payments from pre-petition garnishment and ultimately returning payments with interest did not preclude finding of willful violation because garnishing creditor had an affirmative duty to stop garnishment proceedings). A "willful violation" does not require a specific intent to violate the automatic stay. See Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir.1999) (explaining that any intentional act is willful with knowledge of the stay); Price v. United States, 42 F.3d 1068, 1071 (7th Cir.1994) ( "A 'willful violation' does not require a specific intent to violate the automatic stay."); Citizens Bank v. Strumpf, 37 F.3d 155, 159 (4th Cir.1994) ("To

---

[8] Since, pursuant to § 1115, the estate consisted of all property owned by the debtor on the date of filing plus earnings from services performed by the debtor and property acquired by the debtor after the commencement of the case, any payments by Caffey from his assets or earnings were payments from property of his bankruptcy estate.

13

constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay."), rev'd on other grounds, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); Goodman v. Knight (In re Goodman), 991 F.2d 613, 618 (9th Cir. 1993) ("A 'willful violation' does not require a specific intent to violate the automatic stay," but only that the defendant knew of the automatic stay and intended the acts that violated the stay); Budget Service Co. v. Better Homes of Virginia, Inc., 804 F.2d 289, 292-93 (4th Cir.1986) (Willful violation where contemnor "knew of the pending petition and intentionally attempted to repossess the vehicles in spite of it.").

### 6. Damages

Russell's objection to the damages award appears to be based primarily on the issues raised above. Although Russell's list of issues before the court includes "[w]hether the Court erred in the award of damages that were not supported by the evidence and were not legally quantifiable", she failed to submit any argument or explanation addressing the issue. Russell's brief does not direct any argument towards the specific damage amounts awarded. Russell has clearly failed to show that the bankruptcy court's factual findings regarding damages are clearly erroneous and, after review of the bankruptcy court's order, the court finds no legal error in the determination of damages.

### CONCLUSION

Therefore, for the reasons set forth above, the bankruptcy court orders on appeal in this case are hereby **AFFIRMED**:

(1) the orders denying Russell's motion for reconsideration of the court's March 17, 2008 order (Adv. Docs. 46, 47);

2) the order and judgment overruling Russell's objection to the professional fees

14

of Irvin Grodsky and sustaining Russell's objection to professional fees of John Fisher and awarding Appellee a total of $57,470.50 (Adv. Docs. 64, 65); and

3) the order and judgment enjoining the enforcement of certain state court orders and awarding damages in the amount of $57,470.50 to Appellee for Russell's violation of the automatic stay (Adv. Doc. 66).

**DONE** and **ORDERED** this 30th day of September, 2009.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE